UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | Case No. 2:23-cr-00132-AGP-EJY |
|---|---|
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| KOFI SARFO and ROSE SARFO, | **RE: ECF NO. 65** |
| Defendants. | |

Pending before the Court is Defendants' Motion to Dismiss the Indictment Based on Vagueness. ECF No. 65. The Court considered the Motion, the Opposition (ECF No. 71, and the Reply (ECF No. 88).

**I.  Background**

On July 18, 2023, the grand jury indicted Defendants on one count of conspiracy to commit wire fraud, a violation of 18 U.S.C. § 1349, and four counts of wire fraud, violations of 18 U.S.C. § 1343. Count Six of the Indictment charges Kofi Sarfo with money laundering. ECF No. 1.

Defendants argue the Government's Indictment for wire fraud fails for vagueness, as-applied, because the allegations pertain to where Defendants deposited loan proceeds, which is not a violation of the law. Defendants say that while the Government alleges Defendants "made false certifications" seeking Paycheck Protection Program ("PPP") money and Economic Injury Disaster Loan ("EIDL") funds, there was no "prohibition" on what they did and the Government's reliance on PPP and EIDL program directives, which "are ambiguous," demonstrates the vagueness of the law. ECF No. 65 at 7. Defendants' moving papers submits the Indictment does not allege they spent loan proceeds on non-business related expenses or any other misuse of funds except for the deposits into brokerage and crypto current accounts. *Id.* at 3. Defendants conclude dismissal of the entire Indictment is required, "but especially the Wire Fraud counts."[1] *Id.* at 7.

---

[1] Other than this statement, Defendants' Motion does not mention, let alone address, the money laundering charge against Kofi Sarfo or the conspiracy to commit wire fraud or 18 U.S.C. § 1349. ECF No.65, generally.

1

Citing an FBI interview of Small Business Administration ("SBA") attorney Kandace Zelaya, Defendants contend the SBA did not issue guidelines, regulation or directives stating for what purposes PPP funds could be used. *Id*. A review of Ms. Zelaya's interview by the FBI reflects Zelaya acknowledged there was no guidance regarding the specific types of accounts in which PPP funds could be deposited. ECF No. 65-1 at 5. However, the interview notes show Ms. Zelaya explained PPP interim final rules ("IFR") "clearly lists what is approved … use" of the funds, and "provided guidance stating business owners could only use PPP loan proceeds for specified authorized loan expenses." ECF No. 65-1 at 5. While Zelaya explained there was no guidance stating a loan recipient could not buy cryptocurrency, she also stated the importance was how the money was used, not in what type of account the money was held. *Id*. at 4-6. Defendants allege that Ray Brown, a government employee familiar with the EIDL program, told government counsel "there was no guidance on businesses buying crypto currency with the EIDL funds, it is something that never had come up." ECF No. 65 at 8 *citing* ECF No. 65-1 at 9. Brown also stated that while the purchase of cryptocurrency had never come up, "it would not be allowed because it is not considered to be a use of the business" and that "if a business certified EIDL funds would be used for authorized business purposes and then used … on crypto or stocks" the loan would not be funded. *Id*. Defendants submit this demonstrates their prosecution is based on "subjective opinions." ECF No. 65 at 8. Defendants conclude that if the Government was not specific about "prohibited conduct" an "ordinary person … cannot be held to a higher standard." *Id.* at 8-9.

The Government responds Defendants have the argument all wrong because the prosecution of Defendants is based on "fraudulently obtaining PPP and EIDL loans to unlawfully enrich themselves" not on "violations of the CARES Act or regulations/policies used to administer the PPP and EIDL programs." ECF No. 71 at 5-6. The Government points to the Indictment alleging "multiple false representations … tied specifically to each loan." *Id*. at 6.[2] The Government states

---

[2] Paragraph 5 of the Indictment (ECF No. 1) states PPP loan requirements include certification that loan proceeds would be used for business purposes only. Paragraph 8 identifies information that must be provided for an EIDL loan. Paragraph 10 states how EIDL loan funds could be used (payroll expenses, sick leave, production costs, business obligation, and others). Paragraphs 16-32 allege Defendants "knowingly and willfully" agreed to commit wire fraud to enrich themselves through fraudulently obtaining PPP and EIDL loans while concealing the misuse of funds through fraudulently representing the "funds would be used to retain workers and maintain payroll," cover multiple forms of business expenses and used for business purposes, "used as working capital to alleviate economic injury," while

Defendants' focus on where the PPP and EIDL funds were stored is without merit because "if a defendant is alleged to have used loan funds for their own enrichment after representing that they would be used for business expenses, that individual can properly be charged with loan fraud, regardless of how the funds were stored." *Id*. (citation omitted).  The Government states Defendants are "charged with a straightforward loan fraud scheme" and not violations of the CARES Act; thus, there is no basis for a finding of as-applied vagueness. *Id*. at 6-8.[3]

In Reply, Defendants contend their vagueness arguments overlaps with "whether the Indictment properly alleges acts that were clearly criminal." ECF No. 88 at 9.  Defendants contends "where the only wrongful act alleged is failing to use funds for a 'business purpose' …, a reasonable person would not be on notice that storing the funds in a personal account pending their business use[] could possibly subject them to criminal liability." *Id*.  Defendants say the definition of "disposition of funds" is insufficient to put a "normal citizen" on notice that storing funds in an investment account is illegal and, therefore, the "application of the statute is clearly constitutionally vague." *Id*. at 9.

## II. Discussion

The federal wire fraud statute under which Defendants are charged is found at 18 U.S.C. § 1343.  This statute states:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, picture or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.  If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

---

disbursed funds were transferred to personal brokerage accounts and used to purchase stocks and cryptocurrency.  In Paragraph 38 of the Indictment, the Government alleges Defendants transmitted wire communications that were for the purposes of executing the "scheme and artifice to defraud."

[3] The Government also argues that to the extent Defendants ask the Court to look beyond the four corners of the Indictment or want to dispute factual issues regarding their awareness of SBA regulations and guidelines, these are trial issues and not issues to be resolved on a motion to dismiss.  ECF No. 71 at 9-10.

3

To establish a violation of 18 U.S.C. § 1343, the Government must prove: "(1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to defraud." *United States v. Borgheriu*, Case No. 4:22-CR-06040-MKD, 2023 WL 8634784, at *3 (E.D. Wash. Dec. 13, 2023) *quoting United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013). "[D]efendant bears the burden of establishing that the statute is vague as applied to his particular case, not merely that the statute could be construed as vague in some hypothetical situation." *United States v. Borges*, Case No. 1:20-cr-77, 2023 WL 4205385, at *2 (S.D. Ohio June 27, 2023) *quoting United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001) (citing *United States v. Avant*, 907 F.2d 623, 625 (6th Cir. 1990)).

To prevail on a challenge that 18 U.S.C. § 1343 is void for vagueness as applied Defendants must show the statute "is not sufficiently clear to provide guidance to citizens concerning how they can avoid violating it and to provide authorities with principles governing enforcement." *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013). "In an as-applied challenge, a statute is unconstitutionally vague if it fail[s] to put a defendant on notice that his conduct was criminal." *Id.* (bracket in original, internal quote marks omitted).

Defendants' argument focuses on where Defendants deposited loan proceeds received under the PPP and EIDL programs to which they applied (ECF Nos. 65 at 2, 3, 6-8; 88 at 9), while adding the unsupported conclusion that Defendants did not use the funds for personal expenses. *Id*. 65 at 3, 6. However, the Indictment is not based on where the loan proceeds were deposited, but on the alleged intentional misrepresentations regarding how the proceeds would be and were actually used. With respect to Defendants' PPP loan, the factual averments in the Indictment include that despite Defendants' representation on the PPP loan application that they intended to use PPP funds "to retain workers and maintain payroll" and pay "mortgage interest, rent, utilities, [and] operation expenditures," and despite Defendants signed promissory note stating virtually identical intended uses, Defendants transferred PPP loan proceeds to their personal brokerage account "and subsequently *used to fund the purchase of stocks for their own enrichment*." ECF No. 1 ¶¶ 19, 20,

4

22 (emphasis added).⁴  The Indictment does not allege the deposit of the PPP loan proceeds in any account, by itself, constitutes wire fraud, but that the transfer to a personal brokerage account *and* purchase of stock for Defendants' enrichment was a violation of law.  *Id*. ¶ 22.  As the Government states "[t]he Defendants are charged with 'fraudulently obtaining' PPP and EIDL loans to 'unlawfully enrich themselves.'"  ECF No. 71 at 5.

With respect to the EIDL, the Government asserts that when Defendants submitted their EIDL Loan Authorization and Agreement they falsely stated the loan would be used "solely as working capital to alleviate economic injury" and "none of the Obligations" would primarily be "for personal, family or household purposes."  ECF No. 1 ¶ 28.  The Indictment further avers: "In truth, Defendants did not intend to use the loan funds solely for permissible purposes."  *Id*.  That is, when Defendants transferred the EIDL proceeds to their personal brokerage account, they did not merely deposit money into a cryptocurrency exchange account for purposes of storing the funds; they used the transferred funds to "*purchase[] and caused to be purchased cryptocurrency for their own enrichment*."  *Id*. ¶ 31 (emphasis added).  The Indictment alleges Defendants did these acts "knowingly and willfully … to commit the offense of wire fraud" because "Defendants did not intend to use the loan funds solely for … permissible purposes."  *Id*. ¶¶ 16, 19, 20, 28.  Thus, whereas Defendants focus on where the PPP and EIDL funds were deposited, the misrepresentations alleged are not based on these deposits but on Defendants' loan applications and promissory note statements regarding for what purposes the money would be used in contrast to how Defendants intended to use and did use the loan proceeds.  *Id*. ¶¶ 16, 19, 20, 22, 23, 31.

The Government does not cite law regarding the prohibition of deposits into brokerage or cryptocurrency accounts because the deposits are not the fraud alleged.  Indeed, the Indictment does not allege a violation of the CARES Act or policies and procedures enacted to administer the same because this is not the crime with which Defendants are charged.  ECF Nos. 1; 71 at 8-10.  Rather, the conduct supporting wire fraud is that PPP and EIDL loans were obtained based on false

---

⁴ The Indictment further alleges that when Defendants submitted to Loan Forgiveness Application, they falsely represented the loan proceeds were used for business purposes when they were not.  *Id*. ¶ 23.

5

representations regarding how loan proceeds would be used—not for business purposes as stated but to enrich Defendants personally. ECF Nos. 1 ¶¶ 22, 30, 31; 71 at 5.

In the only case this Court found alleging 18 U.S.C. § 1343 was vague as applied to COVID related loan programs, the Court rejected the argument. *United States v. Borgheriu*, Case No. 4:22-CR-06040-MKD, 2023 WL 8634784, at *4 (E.D. Wash. Dec. 13, 2023). The court in *Borgheriu* stated: "18 U.S.C. § 1343 places Defendant on notice that the charged conduct is criminal, as it proscribes devising 'any scheme … for obtaining money … by means of false or fraudulent pretenses, representation or promise ….'" *Id*. The court further explained the wire fraud charge did not rely on the Code of Federal Regulation to which the defendant referred when arguing vagueness. *Id*. The court stated: "Whatever import … [the Code of Federal Regulation] may have for this case, it is not a basis of criminal liability as Defendant asserts." *Id*.

The reasoning and holding in *Borgheriu* are applicable here. Defendants' arguments relating to the FBI's interview of Zelaya and Brown regarding PPP or EIDL guidance is of no moment when considering whether the wire fraud statute is vague as applied. That is, Defendants must demonstrate the wire fraud statute (not federal agency guidelines) failed to put them on notice that their conduct was criminal. *Harris*, 705 F.3d at 932. The statute does so when it states wire fraud occurs if one or more individuals "devise any scheme or artifice to defraud" in order to obtain money "by means of false or fraudulent pretenses, representations, or promises" and uses a wire transmission to further that scheme with the specific intent to defraud. 18 U.S.C. § 1343; *Borgheriu*, 2023 WL 8634784 at *3 *quoting Jinian*, 725 F.3d at 960. A review of Defendants' Motion and Reply show they do not attack the elements required to prove a violation of the statute, the wording of the statute itself, or the Ninth Circuit's holding regarding what the Government must prove. ECF No. 65 and 88 at 9-10. Instead, Defendants discuss SBA guidance and supposed lack thereof, which ignores what SBA counsel did say (the SBA "did spell out what you can do with the funds"; "it was important how you used the money and not what account you had the money in"). ECF No. 65 at 7-8.

The Indictment does not refer to, let alone rely on, SBA guidance to demonstrate Defendants' criminal activity. ECF No. 1. In order to prove wire fraud, the Government does not have to demonstrate a violation of the SBA guidance (or lack thereof). Thus, even if SBA guidance lacked

the level of clarity to which Defendants point, this does not impact the fact that the wire fraud statute put Defendants on notice that they could not obtain PPP and EIDL loans by means of deception. Defendants could not make "false or fraudulent pretenses, representations, or promises" in order to obtain loans that were ultimately used to buy stocks or cryptocurrency. *See Borgheriu*, 2023 WL 8634784 at *5 *quoting United States v. Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020).[5]

The Court finds there is nothing vague about the wire fraud statutory prohibitions when applied to the conduct at issue in this case. Defendants made representations in their loan applications and promissory note regarding how the money they sought through PPP and EIDL would be used. Defendants received the loans based on those representations. Defendants are alleged to have used the loan proceeds for personal gain, not for the business purposes they stated.

### III. Recommendation

Accordingly, and based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' Motion to Dismiss the Indictment Based Upon Vagueness (ECF No. 65) be DENIED.

Dated this 20th day of May, 2024.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

---

[5] Defendants argue the rule of lenity applies to this case because "the statute is so vague as to preclude fair notice." ECF No. 65 at 5. The rule of lenity "requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 514 (2008). However, the rule of lenity is reserved "for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute." *Moskal v. United States,* 498 U.S. 103, 108 (1990) (internal citation and quote marks omitted). Defendants fail to analyze or apply this rule to the case at bar; instead stating the conclusion that the rule applies. ECF No. 65 at 5. The Court finds there is no basis upon which to conclude the rule of lenity would yield dismissal of the charges against Defendants.

Defendants also offer one paragraph discussing law that prohibits novel application of criminal statutes. *Id.* at 6. Defendants do not explain, support or even suggest that making false statements about the use of money sought through a federal loan program, and subsequent use of that money for an impermissible purpose, is novel. Defendants do not demonstrate charges stemming from alleged material misrepresentation on loan applications are novel. The Court's research shows there is, in fact, nothing novel about such charges. *See*, for example, *United States v. Dadyan*, 76 F.4th 995 (9th Cir. 2023) (defendants were convicted of, *inter alia*, conspiracy to commit wire fraud relating to fraudulent PPP and EIDL loan applications); *United States v. Hymas*, 605 Fed.Appx. 622 (9th Cir. 2015) (Defendant convicted on wire fraud for misrepresentations on loan application); *United States v. Walker*, Case No. 22-cr-00105-LK, 2023 WL 1099772 (W.D. Wash. Jan. 30, 2023) ("a federal grand jury indicted … [the defendant] on six counts of wire fraud related to … allegedly false and misleading Paycheck Protection Program loan applications ….").

Finally, Defendants incorporate the entirety of their separate Motion to Dismiss based on the failure to state an offense (ECF No. 66) contending the issues in that motion "overlap" with Defendants' vague as-applied argument. The standard for dismissal based on constitutional vagueness is distinct from the standard for failure to state an offense. The Court considers ECF No. 66 in a separate Report and Recommendation.

**NOTICE**

Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).