UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KOFI SARFO and<br>ROSE SARFO,<br><br>Defendants. | Case No. 2:23-cr-00132-AGP-EJY<br><br>**REPORT AND RECOMMENDATION**<br><br>RE:  ECF NO. 66 |

Pending before the Court is Defendants' Motion to Dismiss the Wire Fraud Counts in the Indictment Based upon the Failure to State an Offense. ECF No. 66. The Court considered Defendants' Motion, the Government's Opposition (ECF No. 71), and Defendants' Reply (ECF No. 88).

**I.   Background**

On July 18, 2023, a federal grand jury sitting in Nevada indicted Defendants on, *inter alia*, four counts of wire fraud in violations of 18 U.S.C. § 1343. In their Motion to Dismiss Defendants argue the Indictment fails to allege (1) Defendants spent loan proceeds "on non-business related expenses" and (2) recipients of Payroll Protection Program ("PPP") or Economic Injury Disaster Loan ("EIDL") money cannot deposit such funds in brokerage accounts or in a cryptocurrency exchange. ECF No. 66 at 2-3. Defendants say these failures demonstrate the Indictment does not allege each of the necessary elements of wire fraud with particularity. *Id*. Defendants further argue there is, in fact, no prohibition on where they could store PPP and EIDL loan proceeds, and that depositing the loan proceeds into their brokerage account was "not a disposition of the funds at all." ECF No. 66 at 4-7. Defendants says the deposit of the funds received into their brokerage account is no different than a deposit into a "high yield savings account or certificate of deposit." *Id*. at 8.

Defendants point to the CARES Act and argue the Act does not prohibit depositing funds into investment accounts prior to use of those funds for legitimate purposes. *Id*. Because the list of prohibited uses does not include depositing funds into a brokerage account, Defendants contend the

1

wire fraud statute is "inapplicable" to the conduct with which they are charged. *Id*. at 8-9. Defendants' rely on the Rule of Lenity to contend that they "are not clearly and unambiguously prohibited" from doing the acts with which they are charged. *Id*. at 9-10.

Defendants conclude that if a violation of loan agreement terms is the basis for the Government's case, then the Indictment fails because there is no "separate fiduciary or statutory duty imposed" on Defendants. *Id*. at 10. Defendants say criminal conduct cannot be based on the Government's interpretation of what constitutes a breach of PPP or EIDL programs because then every breach "could constitute the basis for a criminal case." *Id*. Defendants repeat that all they did was deposit loan proceeds "into alternative depositories to a traditional bank." *Id*. at 11.

The Government responds that "[b]ecause the Indictment plainly alleges the statutory elements of the offenses and sufficient facts to inform the Defendants of the charges against them, there is no basis to dismiss … for … failure to state an offense." ECF No. 71 at 10 (citation omitted). The Government submits Defendants' argument regarding a prohibition on where they could deposit loan proceeds in anticipation of the lawful use of those proceeds is not an element of the crimes with which they are charged. *Id*. at 11. The Government explains the crimes with which Defendants are charged is not based on where Defendants stored the loan proceeds, but on their alleged false representation regarding how they would use the funds, which is "alleged in multiple paragraphs" in the Indictment. *Id*. at 11-12.

The Government further contends Defendants' arguments regarding whether transfer of funds were "dispositions" is a factual question irrelevant to whether the Indictment states the offenses charged and is not a question to be decided on a motion to dismiss. *Id*. at 12. Whether the CARES Act prohibits where PPP and EIDL funds are stored has no relevance to the claims in the Indictment because this argument does not challenge an element of the charged offenses or the sufficiency of the facts alleged. *Id*. at 12-13. The Government points out that not only were the funds transferred from the loan recipient to Defendants' personal investment accounts, but the funds were used "to purchase stocks and cryptocurrency." *Id*. The Government also reminds the Court that Defendants are not charged with violating the CARES Act. *Id*.

Addressing Defendants' contention that the Indictment fails to plead materiality, the Government submits the Indictment repeatedly does so. *Id*. at 13. The Indictment also alleges fraud based on Defendants' "affirmative false representations." *Id*. The Government argues "where a theory of false representation is charged, no duty is needed." *Id*. (citations omitted). Finally, the Government argues Defendants' focus on the type of personal expenditures made "is immaterial"; however, and in any event, Defendants made "large personal purchases of stocks and cryptocurrency." *Id*. at 14. Setting aside Defendants' misrepresentations regarding their purchases, and attempts to mischaracterize the charges as violations of the CARES Act, the Government states Defendants are charged "with a scheme to defraud for making false representations to obtains loan funds" they used for "personal enrichment …." *Id*.

Defendants' Reply returns to the argument that the Indictment does not plead necessary element of wire fraud arguing there are no facts (only conclusions) pleaded supporting the existence of fraudulent intent. ECF No. 88 at 2-3. Arguing "the Government's burden," Defendants say the facts must be sufficient to show that "if proven" they would "tend to establish" fraudulent intent at the time the statements were made and there are "no [such] facts" alleged. *Id*. at 3-4. The Reply avers the Indictment does not properly allege materiality because these allegations are conclusory not factual (*id*. at 5-6), and that "storing" funds in accounts in their personal names rather than business names does not plead criminal liability. *Id*. at 7. Defendants talk about the case going forward—that is the presentation of evidence—that will demonstrate Defendants deposited funds "where they would appreciate" until the funds could be used for a legitimate purposes. *Id*. Defendants' argument continues to focus solely on "storing" the funds and whether that is disposing of funds, saying nothing in response to the allegations that Defendants purchased stocks and cryptocurrency. *Id*. at 7-8. Defendants conclude "the fact that the funds had not reached a final use implicates the justiciability of the [G]overnment's claims, as without the funds being actually used for something, rather than stored, the Wire Fraud charge would not, and did not, ripen …." *Id*. at 8.

Defendants Reply raises a somewhat convoluted argument, contending Defendants "alleged false statements … relating to procuring the EIDL loan were made in the loan agreement … and amended loan agreement … making both enforceable portions of the loan contract." ECF No. 88 at

3

5. Defendants likewise allege that false statements made for purposes of procuring the PPP loan were made in the promissory note and loan application. *Id*. Citing a Fifth Circuit civil case, Defendants contend "the Indictment fails to allege that the false statements at the heart of this case were extra-contractual obligations by themselves, all fraud allegations relating to the EIDL loans must be dismissed, and any fraud allegations arising from the promissory note of the PPP loan must likewise be dismissed." *Id*.

**II.     Discussion**

    A.     <u>The Court is Bound by the Four Corners of the Indictment</u>.

When a motion to dismiss an indictment is filed in the district court, the court must accept the allegations in the indictment as true and "analyz[e] … whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *Id*. A challenge to an indictment does not assess the veracity of the charges or test the evidence, but instead challenges whether an alleged charge is "sufficient on its face." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996). That is, "[t]he indictment either states an offense or it doesn't." *Boren*, 278 F.3d at 914. For this reason, the Court "should not consider evidence not appearing on the face of the indictment." *Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) (quoting *United States v. Marra*, 481 F.2d 1196, 1199-1200 (6th Cir. 1973)). A motion to dismiss an indictment is properly ruled upon before trial "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.), *cert. denied*, 478 U.S. 1007 (1986).

    B.     <u>The Indictment Sufficiently Alleges Wire Fraud</u>.

Defendants challenge the four wire fraud counts in the Indictment which allege:

- Defendants acted with the intent to defraud—obtain money—through knowingly making false representations by means of wire transmissions for purposes of enriching themselves. ECF No. 1 ¶¶ 16-17, 35;

- Defendants' PPP loan application stated the funds would "be used to retain workers and maintain payroll," make mortgage payments, pay rent, pay utilities, pay other operational expenditures, and cover other costs. *Id*. 1 ¶ 19;

- Defendants' PPP Promissory Note "contained materially false and fraudulent representations" such as the loan proceeds would "be used to

4

- retain workers and maintain payroll," make mortgage payments, cover other costs, and "[a]ll proceeds … [would] be used for business-related purposes as specified in the Application and consistent with PPP Guidance." *Id*. ¶ 20;

- After receiving the loan proceeds in Defendants' business account, Defendants transferred PPP loan proceeds to their personal brokerage account "and subsequently used the funds to purchase stocks for their own enrichment." *Id*. ¶ 22;

- Defendants submitted an EIDL application to the Small Business Administration on behalf of Defendants' business. The Loan Authorization and Agreement stated the loan would be used by the business "as working capital to alleviate economic injury" caused by the COVID pandemic. *Id*. ¶ 26;

- Defendants increased the EIDL loan from $150,000 to $1,394,000 "falsely representing" they would "use all the proceeds … solely as working capital to alleviate economic injury" when "[i]n truth, Defendants did not intend to use the loan funds solely for permissible purposes." *Id*. at 28;

- After receiving the loan proceeds in their business account, Defendants transferred loan proceeds to their personal brokerage account and "used the funds to purchase stocks for their own enrichment." *Id*. at 30;

- Defendants also deposited some of the EIDL loan proceeds into a cryptocurrency exchange and purchased cryptocurrency for their own enrichment. *Id*. ¶ 31;

- Defendants acted knowingly and with the intent to defraud, having deceived and intended to deceive, to obtain money and property by making "materially false and fraudulent" representations and promises "by means of wire communications." *Id*. ¶ 35; and,

- For purposes of executing their scheme to defraud, Defendants transmitted communications by wire in five separate violations of the wire fraud statute at 18 U.S.C. § 1343. *Id*. ¶ 38.

Taking the above factual allegations as true, and reading the Indictment as a whole, which the Court must do, the Court considers whether the allegations sufficiently "contain[] the elements of the charged crime in adequate detail to inform the defendant[s] of the charge." *United States v. Kaplan*, 836 F.3d 1199, 1216 (9th Cir. 2016) *quoting United States v. Buckley*, 689 F.2d 893, 896 (9th Cir. 1982). "The court must look at the indictment as a whole, include facts which are necessarily implied, and construe it according to common sense." *Id. citing id*. at 899. As recently stated by the U.S. District Court for the District of Nevada:

> [T]he indictment is "sufficient if: (1) it contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend; and (2) it enables him to plead an acquittal or conviction in

5

bar of future prosecutions for the same offense." *United States v. Hill*, 279 F.3d 731, 741 (9th Cir. 2002) (citing *Hamling v. United States*, 418 U.S. 87 (1974)). *See also Russell v. United States*, 369 U.S. 749, 763-764 (1962); Fed. R. Crim. P. 7(c). An indictment is generally sufficient if it sets forth the offense in the words of the statute itself as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all of the elements necessary to constitute the offenses intended to be punished." *Hamling*, 418 U.S. at 117.

*United States v. Compton*, Case No. 2:17-cr-00228-KJD-NJK, 2020 WL 8414987, at *4 (D. Nev. Dec. 16, 2020). *See also United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009) ("The test of sufficiency of the indictment is not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards.") (internal citations and quotation marks omitted).

To establish a violation of 18 U.S.C. § 1343, the Government must prove: "(1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to defraud." *United States v. Borgheriu*, Case No. 4:22-CR-06040-MKD, 2023 WL 8634784, at *3 (E.D. Wash. Dec. 13, 2023) *quoting United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013). "The first element covers any scheme to deprive another of money or property by means of false or fraudulent pretense, representations, or promises" and "[t]o be actionable, the misrepresentations must have been material." *United States v. Brugnara*, 856 F.3d 1198, 1207-08 (9th Cir. 2017) (internal quote marks and citations omitted).

Here, the Indictment alleges Defendants devised a scheme evidenced through the completion of a loan application, promissory note, and EIDL application all of which plainly stated Defendants sought funds for purposes of supporting their business by making payroll, paying rent or a mortgage, alleviating economic injury, and covering operational expenses when Defendants' true intent was to enrich themselves through stock and cryptocurrency purchases made after transferring the loan proceeds to personal accounts. The alleged affirmative false representations were knowingly made on the applications for PPP and EIDL funds; the funds were almost immediately transferred from their business to their personal accounts; and the transferred funds were then used to purchase stock and cryptocurrency for Defendants' enrichment. ECF No. 1 ¶¶ 21, 22, 29, 30, 31, 35.[1]

---

[1] To the extent Defendants claim the Indictment must plead wire fraud with particularity, the Court finds the Indictment does so as it sets out a complete description of the crime charges and states when and how Defendants committed the alleged wire fraud offenses. ECF No. 1 ¶¶ 1, 17, 20, 22, 26, 28, 30, 31, 35, 38.

Regarding the materiality of Defendants' alleged misrepresentations, Defendants contend the Indictment lacks "a single fact" in support of this required wire fraud element. ECF No. 88 at 6. The Court concludes otherwise. "[A] false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed." *Neder v. United States*, 527 U.S. 1, 16 (1999) (internal quote marks and citation omitted). That Defendants' alleged misrepresentations were material is easily implied when the Indictment is viewed as a whole and construed in accordance with common sense. That is, the alleged false statement—the intent to use loan proceeds to support Defendants' business during the COVID pandemic—was and did influence the decision to disburse over $1mm in disaster relief funds to Defendants, after which funds were transferred to a personal brokerage account and cryptocurrency exchange for the actual purpose of purchasing stock and cryptocurrency. ECF No. 1 ¶¶ 19-22, 25-31, 35, 38.

The second element—the fact of the wire transfers—does not appear to be in dispute, but to the extent it is, the Indictment makes clear Defendants transferred PPP and EIDL funds received in their business account to their personal brokerage account and a cryptocurrency exchange. *Id*. ¶¶ 22, 30, 31, 38.

The third element requires a demonstration of specific intent that may be demonstrated through circumstantial evidence. *Brugnara*, 856 F.3d at 1208 (internal citation omitted). *See also U.S. v. Southerland*, 209 Fed.Appx. 656, 657 (9th Cir. 2006) ("specific intent … need not be shown by direct evidence; rather, it may be inferred from the defendant's statements and conduct.") (internal quote marks and citation omitted). Here, the Indictment alleges Defendants devised a scheme to defraud and obtain money (over $1mm) through fraudulent representations on loan applications and a promissory note the stated purpose of which was clearly not the intended purpose as demonstrated by Defendants' conduct. That is, Defendants submitted a PPP loan application and EIDL authorization stating the intended use of the funds was business related; whereas, after $85,567 in PPP money and $1,244,000 in EIDL funds were transferred to Defendants' business account, Defendants transferred funds to their personal brokerage account and a cryptocurrency exchange from which they purchased stock and cryptocurrency allegedly for their own enrichment. ECF No.

1 ¶ 20-22, 26-31, 35, 38. These allegations, identifying Defendants' statements and conduct, are sufficient to state a claim that includes a specific intent to defraud.[2]

"An indictment is sufficient if it (1) 'contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend' and (2) 'enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009) (quoting *Hamling*, 418 U.S. at 117). "An indictment must provide the essential facts necessary to apprise a defendant of the crime charged; it need not specify the theories or evidence upon which the government will rely to prove those facts." *United States v. Cochrane*, 985 F.2d 1027, 1031 (9th Cir. 1993). The Court finds the Indictment at issue apprises the Defendants of the wire fraud offenses with which they are charged. The allegations state the events that occurred in chronological order, describing specific acts on specific dates allegedly constituting the scheme and intent to commit wire fraud. The allegations are sufficiently specific to allow Defendants to prepare a defense and avoid unfair surprise at trial. The allegations are sufficient to allow Defendants to plead double jeopardy in any subsequent prosecution. The Indictment does not fail to state the offense charged.

    C.  Defendants' Reliance on *United States v. Steffen* is Misplaced.

*U.S. v. Steffen*, 687 F.3d 1104 (8th Cir. 2012), on which Defendants heavily rely, states that the Eighth Circuit "previously characterized a scheme to defraud as a departure from fundamental honesty, moral uprightness, or fair play and candid dealings in the general life of the community." *Id*. at 1113 (internal citation and quote marks omitted). The court goes on to state that "the Supreme Court has placed some outside limits on what constitutes a scheme to defraud under section[] … 1343 … by finding that … [this] statute[] must be interpreted with an eye toward the common-law understanding of fraud." *Id. citing Neder*, 527 U.S. at 20-22. The court then quotes a Fourth Circuit case stating: "At common law, fraud has not been limited to those situation where there is an

---

[2] Defendants point to a Middle District of Pennsylvania case for the proposition that the Indictment fails to allege fraudulent intent. ECF No. 88 at 3 *citing United States v. Perkins*, Case No. 4:22-CR-00246, 2023 WL 7336489, at *3 (M.D. Pa. Nov. 7, 2023). Unlike the case at bar, the indictment in *Perkins* did not properly charge the defendants with an express misrepresentation to obtain the loans at issue. Here, the Indictment unequivocally alleges Defendants submitted applications and a promissory note expressly and falsely stating the intent to use the proceeds for business purposes when Defendants' true purpose was the purchase of stocks and cryptocurrency for personal gain. ECF No. 1 ¶¶ 20, 22, 28, 30, 31.

affirmative misrepresentation or the violation of independently-prescribed legal duty…. Rather even in the absence of a fiduciary, statutory, or other independent legal duty to disclose material information, common-law fraud includes acts taken to conceal, create a false impression, mislead, or otherwise deceive in order to prevent the other party from acquiring material information." *Id*. *citing United States v. Colton*, 231 F.3d 890, 898-99 (4th Cir. 2000). The court goes on to discuss "mere silence" in the absence of an independent duty is insufficient to demonstrate a scheme to defraud. *Id*. at 1115. Here, of course, Defendants were not merely silent.

At the risk of redundancy given the above discussion, there is no doubt that the Government alleges Defendants made affirmative representations regarding the use of government funds on a PPP loan application and EIDL application that were directly contrary to the intended use of those funds. Defendants' repeated reference to the Government's failure to identify an independent legal breach of duty is misplaced as this standard applies in the absence of an affirmative misrepresentation. *See id.* at 1114-15 differentiating affirmative misrepresentations from Steffen's silence and further contrasting "passive concealment—mere nondisclosure or silence—and active concealment, which involves the requisite intent to mislead by creating a false impression or representation." *Id*. at 1115 (internal citations omitted). In *Steffen*, unlike Defendants in the case at bar in which there was an express misrepresentation, the indictment failed to allege fraud because the breach "was not accompanied … by [an] express misrepresentation." *Id*. at 1116.

The Ninth Circuit makes clear wire fraud claims may be premised on either omissions or affirmative misrepresentations. *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015); *United States v. Yates*, 16 F.4th 256, 275 (9th Cir. 2021). A fraud charge premised on an omission must establish that "an independent duty [ ] has been breached by the person so charged." *United States v. Shields*, 844 F.3d 819, 822 (9th Cir. 2016) (internal quotation and citation omitted). An indictment that includes omission-based fraud "must allege facts giving rise to a duty to disclose." *United States v. Holmes*, Case No. 5:18-cr-00258-EJD, 2020 WL 666563, at *14 (N.D. Cal. Feb. 11, 2020). In contrast to omission-based fraud, there is no breach of an independent duty required for affirmative misrepresentation-based fraud. *United States v. Benny*, 786 F.2d 1410, 1418 (9th Cir.

9

1986) ("Proof of an affirmative, material misrepresentation supports a conviction of mail fraud without any additional proof of a fiduciary duty.").

The holding in *Steffen* is not applicable to Defendants who are alleged to have made multiple affirmative material misrepresentations on PPP and EIDL applications.

        D.      <u>Defendants' Focus on the Disposition of Funds, the CARES Act, and the Rule of Lenity is Also Misplaced.</u>

Defendants invest in the argument that the "disposition" of the PPP and EIDL funds from one account to another and storing of the funds in a brokerage or cryptocurrency account is not illegal. ECF Nos. 66 ay 7-10; 88 at 6-8. However, the Indictment neither focuses on where the allegedly misused funds were stored nor contends the storage of funds in brokerage or cryptocurrency exchanges is illegal. ECF No. 1. As the Government states, where the loan proceeds were stored is "not an element of the charged crime." ECF No. 71 at 11; *see also id*. at 12.

While the transfer of the funds out of the business account into which the PPP and EIDL funds were originally disbursed is a fact alleged in the Indictment, the focus is on the misrepresented intent and actual use of the loan proceeds that constitutes the scheme and intent to defraud. Further, even if Defendants' definition of "disposition" of funds ("the act of transferring something to another's care or possession") is germane to whether the Indictment sufficiently states the charges, that definition is satisfied when the Government alleges Defendants used PPP and EIDL funds to buy stock and cryptocurrency thereby transferring the PPP and EIDL money from themselves to those from whom these purchases were made.

That the CARES Act does not prohibit storing funds in an investment account is a flawed argument for two reasons. First, Defendants are not charged with violations of the CARES Act. *See* ECF No. 1. Second, even if the finder of fact must determine if storing funds in personal brokerage accounts or cryptocurrency exchanges is a violation of the CARES Act, this depends on the presentation of evidence beyond the four corners of the Indictment to which the Court is bound when determining whether the Indictment sufficiently states charges of wire fraud. *Boren*, 278 F.3d at 914.

1  Finally, Defendants throw into their argument that the rule of lenity requires dismissal of the Indictment. ECF No. 66 at 9. The rule of lenity "requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 514 (2008). However, the rule of lenity is reserved "for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute." *Moskal v. United States*, 498 U.S. 103, 108 (1990) (internal citation and quote marks omitted). Defendants do no analysis of the legislative history or motivating policies underlying 18 U.S.C. § 1343. Moreover, Defendants cite no case in which 18 U.S.C. § 1343 was found ambiguous. *See* ECF Nos. 66 and 88. The analysis above shows the Court finds no ambiguity in the statute as applied to the violations with which Defendants are charged. Defendants' argument regarding the rule of lenity fails.

### III. Recommendation

Accordingly, and based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' Motion to Dismiss the Wire Fraud Counts in the Indictment Based Upon Failure to State an Offense (ECF No. 66) be DENIED.

Dated this 24th day of May, 2024.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

### NOTICE

Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).