UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KOFI SARFO and<br>ROSE SARFO,<br><br>Defendants. | Case No. 2:23-cr-00132-AGP-EJY<br><br>**REPORT AND RECOMMENDATION**<br><br>RE:  **ECF NO. 67** |

Pending before the Court is Defendants' Motion to Compel Production of Discovery Materials in Support of Selective Enforcement and/or Prosecution Claim.  ECF No. 67.  The Court considered the Motion, the Government's Opposition (ECF No. 72), and Defendants' Reply (ECF No. 85).

**I.  Relevant Background**

Defendants are charged in an Indictment with one count of conspiracy to commit wire fraud and four counts of wire fraud in violation of 18 U.S.C. §§ 1349 and 1343.  ECF No. 1.  Kofi Sarfo is also charged with one count of money laundering in violation of 18 U.S.C. § 1957.  *Id*.  Defendants move for an order compelling the Government to produce nine categories of documents and information they say will show selective enforcement and prosecution of these charges as they relate to the Paycheck Protection Program ("PPP") instituted during the COVID-19 pandemic.[1]  The gravamen of the factual support offered by Defendants in their Motion is as follows:

---

[1]   The nine categories of documents and information sought are: "1. All statistical information in the government's possession, custody or control regarding the racial and ethnic backgrounds of individuals receiving PPP and/or EIDL[, the abbreviation for Economic Injury Disaster Loan,] …, both in Nevada and the rest of the country.  2. All statistical information in the government's possession, custody or control regarding the racial and ethnic identity of individuals prosecuted nationwide for federal criminal offenses (including wire/mail fraud, conspiracy and money laundering) related to PPP/EIDL fraud between the time period March 2020 and the present.  3. All statistical information in the government's possession, custody or control regarding the racial and ethnic identity of individuals prosecuted in Nevada for federal criminal offenses (including wire/mail fraud, conspiracy and money laundering) related to PPP/EIDL fraud between the time period March 2020 and the present.  4. All manuals, handbooks, memoranda, and other documents containing information regarding the policies and practices of the United States Department of Justice (which includes the United States Attorney's Office and the Federal Bureau of Investigation) concerning the criteria to be applied in deciding who to prosecute for PPP/EIDL fraud.  5. All statistical information in the government's possession, custody or control regarding the racial and ethnic identity of individuals, nationwide, whom the United States Department of

- "According to the Federal Reserve Bank of Dallas," less than 2% of PPP Loans "went to black businesses," while "white owned businesses received approximately 83% of the government loans." ECF No. 67 at 6-7[2];
- The Department of Justice disproportionately pursued "black defendants in pandemic related loan fraud prosecution …." *Id*. at 7[3]; and,
- By way of example, "in one judicial district, approximately 86% of the defendants prosecuted for COVID-19 related loan fraud were black." *Id*.[4]

Defendants say these are "startling statistics" establishing "'some' basis for discovery …." *Id*.[5]

The Government responds that Defendants do not meet the burden required "to obtain selective prosecution discovery because they fail to show … the Government declined to prosecute similarly situated suspects of other races."  ECF No. 72 at 4 (citation omitted).  The Government points to Defendants' cited statistics arguing reliance on a single sentencing memorandum from one federal district (ECF No. 67 at 9-19) that relied on information defense counsel pulled from that district's docket, which was limited to "defendants represented by the Federal Defender Program," is not representative of overall PPP or EIDL prosecutions and "should be given little or no weight." *Id*. at 5.  The Government says that even if the non-representative sample is found reliable and

---

Justice declined to prosecute for federal criminal offenses (including wire/mail fraud, conspiracy and money laundering) related to PPP/EIDL fraud between the time period March 2020 and the present.  6. All statistical information in the government's possession, custody or control regarding the racial and ethnic identity of individuals in Nevada whom the United States Department of Justice declined to prosecute for federal criminal offenses (including wire/mail fraud, conspiracy and money laundering) related to PPP/EIDL fraud between the time period March 2020 and the present.  7. All statistical information in the government's possession, custody or control regarding the racial and ethnic identity of individuals, nationwide, whom the Federal Bureau of Investigation declined to investigate for federal criminal offenses (including wire/mail fraud, conspiracy and money laundering) related to PPP/EIDL fraud between the time period March 2020 and the present.  8. All statistical information in the government's possession, custody or control regarding the racial and ethnic identity of individuals in Nevada whom the Federal Bureau of Investigation declined to investigate for federal criminal offenses (including wire/mail fraud, conspiracy and money laundering) related to PPP/EIDL fraud between the time period March 2020 and the present.  9. All communications between Bank of America and the government related to the Sarfos and their PPP/EIDL loans."  ECF No. 67 at 7-8.

[2]   Defendants cite http://www.dallasfed.org/cd/communities/2021/1129 in support of this assertion of facts.
[3]   No citation is offered in support of this broad statement.
[4]   *Citing* ECF No. 67-1 at 9-19.
[5]   Defendants cite a sentencing memorandum from a case prosecuted in the Northern District of Georgia, Atlanta Division, titled "*United States of America versus Dondre Berry*."  *Id*. *citing* Appendix at 8-18 (ECF No. 67-1 at 9-19).

representative, Defendants offer no evidence that similarly situated non-black individuals could have been prosecuted but were not.[6] *Id*. at 5-6.

With respect to selective enforcement, the Government argues such claims are "affiliated with law-enforcement" and Defendants make no showing whatsoever that law enforcement in this case "made any enforcement decisions based on race." *Id*. at 7. The Government says the statistics on which Defendants rely pertain to the U.S. Attorney's Office in the Northern District of Georgia—not Nevada—and those same statistics are not limited to FBI investigations, which is what occurred here. *Id*. at 7-8. While Defendants offer details about their arrest, the Government says these details include no evidence that race played any role in the actions taken. *Id*. at 8.

Defendants' Reply focuses on the standard for selective prosecution. ECF No. 85. Defendants are adamant that they have produced "some" evidence that similarly situated individuals were not prosecuted and there was an improper motive in deciding to prosecute Defendants. *Id*. at 2. Defendants also contend (albeit the Court disagrees) the Government did not address the evidence they presented. *Id*. at 3. Defendants conclude the FBI and federal prosecutors decline investigations and cases against those they believe are guilty of crimes "under the guise of 'prosecutorial discretion.'" *Id*. at 4. Defendants refer to the "secrecy" surrounding such decisions and Defendants' inability to know "the role of race, wealth, privilege and political access in our criminal justice system." *Id*. Defendants say they must have access to this information because it may reveal "white recipients of COVID-19 loans were not prosecuted under similar circumstances to" Defendants. *Id*.

**II. Discussion**

    a.    <u>Defendants Are Not Entitled To Selective Prosecution Discovery</u>.

        i.    *The law*.

In 1996, the U.S. Supreme Court decided *United States v. Armstrong*, which considered "the showing necessary for a defendant to be entitled to discovery on a claim that the prosecuting attorney singled him out for prosecution on the basis of race." 517 U.S. at 458. Not all that dissimilar to

---

[6] The Government correctly cites *U.S. v. Armstrong*, 517 U.S. 456 (1996), stating the defendant "failed to identify individuals who were not black and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted." ECF No. 72 at 6 *quoting id*. at 470. Plainly, the Government's Opposition mistakenly left out the word "non" before the word "black" when stating: "Defendants offer no evidence that there are similarly situated black individuals who could have been prosecuted for similar COVID-19 loan fraud but were not." *Id*.

what Defendants argue here, the defendant in *Armstrong* argued "that documents 'within the possession … of the government' that discuss the Government's prosecution strategy for cocaine cases are 'material' to respondents' selective-prosecution claim." *Id*. (internal citation omitted). This argument was rejected under the rubric of Fed. R. Crim. P. 16 because, "in the context of Rule 16[,] 'the defendant's defense' means the defendant's response to the Government's case in chief." *Id*. at 462 (internal citation omitted).

The *Armstrong* Court further stated that "[o]ur cases delineating the necessary elements to prove a claim of selective prosecution have taken great pains to explain that the standard is a demanding one." *Id*. at 463. Recognizing a prosecutor's discretion is subject to constitutional limits, the Court confirmed "the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary+ classification." *Id*. at 464 (internal quote marks and citation omitted). The Court then held: "In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary." *Id*. at 465 (internal quote marks and citation omitted). A defendant "must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose. … To establish a discriminatory effect in a race case, the … [defendant] must show that similarly situated individuals of a different race were not prosecuted." *Id.* (internal quote marks and citations omitted). The Court rejected the argument that this "requirement … make[s] a selective-prosecution claim impossible to prove." *Id*. at 466 (internal citation omitted).

Discussing the standard required to obtain discovery in support of a selective prosecution claim, the Court highlighted the burden discovery creates for the Government and found "a correspondingly rigorous standard for discovery" is appropriately applied. *Id*. at 468. For purposes of demonstrating discriminatory effect, that standard requires "the defendant to produce some evidence that similarly situated defendants of other races could have been prosecuted, but were not …." *Id*. at 469. Thereafter, the Court rejected the evidence presented by Armstrong because the "study [relied upon] failed to identify individuals who were not black and could have been prosecuted for the offense for which … [defendants] were charged, but were not so prosecuted." *Id*. at 470.

4

In 2002, the U.S. Supreme Court reiterated the overall standard established in *Armstrong* stating "we held that a defendant who seeks discovery on a claim of selective prosecution must show some evidence of both discriminatory effect and discriminatory intent." *U.S. v. Bass*, 536 U.S. 862, 863 (2002). In 2003, the Ninth Circuit rejected an argument that it is an abuse of discretion to deny discovery in a selective prosecution case grounded in the argument that "it would have been an 'insuperable task' to produce the evidence required by the court to justify discovery." *U.S. v. Arenas-Ortiz*, 339 F.3d 1066, 1070 (9th Cir. 2003). The court found the defendant's proposition "extends the language of *Armstrong* beyond its intended meaning." *Id*. at 1071. The court further explained that the showing necessary to obtain discovery for a selective prosecution claim is "rigorous" to minimize interference with the prosecutorial function. *Id*. at 1069.

In 2018, the Ninth Circuit held that "[t]o establish a claim of selective prosecution, a defendant must show both discriminatory effect and discriminatory purpose." *United States v. Sellers*, 906 F.3d 848, 852 (9th Cir. 2018) (citing *Armstrong*, 517 U.S. at 465). The court stated that the standard for discovery in such cases is "rigorous" and "intentionally hewn closely to the claim's merits requirements." *Id*. (internal citations omitted).

        *ii.     Defendants' offer evidence insufficient to demonstrate discriminatory effect*.

Defendants offer no evidence from the District of Nevada suggesting that non-black individuals similarly situated to Defendants could have been prosecuted for wire fraud and conspiracy to commit wire fraud relating to PPP and EIDL loans, but were not so prosecuted. ECF Nos. 67, 85. Nonetheless, even if this Court presumes evidence specific to the District of Nevada is not needed to demonstrate discriminatory effect, Defendants' evidence still fails.[7] That is, Defendants offer no evidence that any non-black individual anywhere in the U.S., similarly situated to Defendants who could have been prosecuted for PPP/EIDL related wire fraud or conspiracy to commit wire fraud, was not so prosecuted.

Defendants appear to ask the Court to infer discriminatory effect based on evidence from the Northern District of Georgia. In a sentencing memo submitted in that district by a defendant's

---

[7] The Court notes the Supreme Court in *Bass* questioned whether statistics other than those pertaining to "the decisionmakers in … [defendant's] case" were properly relied upon to demonstrate discriminatory effect. 536 U.S. at 863.

5

federal defender, defense counsel offered evidence that only 14% of PPP/EIDL loan applicants in Atlanta were black while 86% of those prosecuted for fraud of more than $150,000 were black. ECF No. 67-1 at 13. What this evidence does not show is that any non-black individual similarly situated to Defendants—that is, any non-black individual who could have been charged with wire fraud or conspiracy to commit wire fraud related to PPP or EIDL loans—was not so prosecuted. *Id*. Said more simply, the evidence on which Defendants rely does not tell the Court that the Government failed to prosecute non-black individuals similarly situated to Defendants.

Further, the sentencing memo on which Defendants rely is of questionable value. The memo cites to evidence from only 30% of the PPP applicants in Northern District of Georgia counties because it is only that percentage of individuals who reported race on their applications. *Id*. at 13 n.3. The memo also demonstrates the conclusions are based on information pulled from that district's docket in cases where the defendant was represented by the Federal Defender Program. *Id*. at 13 n.4. As such, the data set on which Defendants asks this Court to depend is one that is not representative of 70% of those who applied for loans—those who did not report their race—and no one who retained private counsel when prosecuted for PPP/EIDL fraud.

"[T]o dispel the presumption that a prosecutor has … violated equal protection, a criminal defendant must present clear evidence" in support of that assertion. *Sellers*, 906 F.3d at 852. "[T]he standard for discovery for a selective prosecution claim should be nearly as rigorous as that for proving the claim itself." *Id*. The evidence offered from the Northern District of Georgia is, at best, incomplete and insufficiently reliable to allow the Court to conclude the Government failed to prosecute white or other non-black individuals similarly situated to Defendants as is required by the holding in *Armstrong*. 517 U.S. at 469.

The information offered by Defendants sourced from the Federal Reserve Bank of Dallas fares no better. This evidence offers the percentage of PPP loans that went to black owned businesses versus white owned businesses in Texas. ECF No. 67 at 6-7 and at 6 n.3. Defendants' statement, as well as the website on which they rely, says nothing about the prosecution rate of those who applied or were approved for PPP loans.[8] In fact, the website, last visited by the Court on June

---

[8] The website to which Defendants cite is: http://www.dallasfed.org/cd/communities/2021/1129.

6, 2024, is silent with respect to prosecutions of PPP loan applicants and recipients. *Id*. The website also references numerous variables that may affect application and approval rates, which in turn could impact prosecution rates. *Id*.

The Court finds the evidence regarding prosecution rates in the Northern District of Texas and PPP loan applicants and recipients in the State of Texas is insufficient to establish federal prosecutors failed to charge non-black business owners similarly situated to Defendants with the same crimes with which Defendants were charged. *Armstrong*, 517 U.S. at 469-470; *Arenas-Ortiz*, 339 F.3d at 1069-1070.[9] For this reason, the Court finds Defendants fail to demonstrate discriminatory effect and Defendants' request for discovery request should be denied.

        *iii.*    *Defendants offer no evidence to support a finding of discriminatory purpose.*

Although the Court finds Defendants do not offer sufficient evidence to support a finding of discriminatory effect, the Court also addresses whether Defendants demonstrate evidence that their prosecution was motivated by a discriminatory purpose. In *United States v. Babichenko*, the court stated: "To demonstrate discriminatory purpose, the defendant must show "the government undertook a particular course of action 'at least in part 'because of,' not merely 'in spite of' its adverse effects upon an identifiable group.'" Case No. 1:18-cr-00258-BLW, 2020 WL 6449164, at *3 (D. Id. Nov. 3, 2010) *citing United States v. Turner*, 104 F.3d 1180, 1184 (9th Cir. 1997) (quoting *Wayte*, 470 U.S. at 608) (all single quote marks in the original).[10] In 2003, the Second Circuit Court of Appeals stated a virtually identical standard:

> A defendant seeking to show discriminatory purpose must show "'that the decisionmaker ... selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.'" *Wayte* [*v. United States*], 470 U.S. [598,] 610 [1985] (quoting *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 … (1979)).

---

[9]     The law is also clear that, contrary to Defendants urging (*see* ECF Nos. 67 at 8; 85 at 4), even if better evidence regarding disparate effect cannot be obtained without discovery, this does not render otherwise insufficient evidence sufficient. *Armstrong*, 517 U.S. at 458; *see also Arenas–Ortiz*, 339 F.3d at 1071.

[10]     The Ninth Circuit again favorably cited to *Wayte* in support of its conclusion that the defendant had "not introduced any evidence even remotely showing that his prosecution was based on a discriminatory purpose." *United States v. Sutcliffe*, 505 F.3d 944, 954 (9th Cir. 2007) *citing* and in part *quoting Wayte*, 470 U.S. at 610 ("holding that to prove discriminatory purpose, defendant must show that government undertook particular course of action 'at least in part because of ... its adverse effects upon an identifiable group.'").

*U.S. v. Alameh*, 341 F.3d 167, 173 (2d Cir. 2003) (some internal quote marks omitted). In 2019, the U.S. District Court for the District of Columbia explained:

> To establish a discriminatory purpose, the defendant must show that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, or was designed to prevent or paralyze his exercise of constitutional rights. … Specifically, a defendant "must prove that the decisionmakers in his case acted with discriminatory purpose." *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); *accord United States v. Cooper*, 91 F. Supp. 2d 90, 115 (D.D.C. 2000).

*United State v. Barry*, Case No. 18-00111 (RMM), 2019 WL 2396266, at *5 (D.D.C. June 5, 2019) (internal quote marks and one internal citation omitted).

Here, recognizing that the standard applicable to discovery is less rigorous than the standard Defendants must meet to prove discriminatory purpose, the Court nonetheless finds Defendants fail to meet this less rigorous standard. The Court reviewed Defendants' evidence from the State of Texas, but, as stated above, this evidence does not speak to prosecutions and, therefore, does not support the conclusion the Government undertook Defendants' prosecution, at least in part, because they are black. *Supra* at 6-7. The evidence recited in the Northern District of Georgia sentencing memorandum is incomplete and unreliable. *Supra* at 6. In sum, the Court finds this information does not demonstrate the Government undertook the prosecution of Defendants in any part because of Defendants' race.

Further, Defendants complain about their arrest by the FBI, the time spent sitting in the U.S. Marshal's cell block waiting for their initial appearance, and the Marshal Service's decision to shackle Defendants. Defendants do not state whether this discussion is offered in support of selective prosecution or selective enforcement. *See* ECF No. 67 generally. To the extent these contentions are offered as "some evidence" of selective prosecution discriminatory purpose the Court finds the offer is solely argument. There is no evidence that any of these actions were taken or sanctioned by prosecutors in this case. Indeed, there is nothing before the Court suggesting, let alone demonstrating, the Department of Justice, the District of Nevada's U.S. Attorney's Office generally, or any Assistant U.S. Attorney assigned to this case played any role in any of the decisions or activities identified (other than the press release). Thus, these complaints cannot logically support the conclusion that the prosecution acted with a discriminatory purpose.

Defendants also offer only argument to suggest the manner in which Defendants were arrested somehow demonstrates racial bias. There is no evidence that the manner in which Defendants were arrested differs from the manner in which similarly situated non-blacks are arrested by the FBI. Defendants offer no evidence that only black arrestees are required to wait (sometimes for hours) in the U.S. Marshal's cell block for their initial appearance. Defendants offer no evidence regarding why or when those detained by the U.S. Marshal are shackled.[11] Indeed, the decision by the U.S. Marshal Service to shackle Defendants was made after Defendants were arrested (that is, once they were in U.S. Marshal custody waiting for their initial appearances). At best, it is unclear how a decision by the U.S. Marshal Service that occurred after arrest demonstrates a discriminatory purpose in the alleged selective prosecution of Defendants.

Defendants say their treatment was akin to treatment of violent offenders. ECF No. 67 at 4. Given Defendants' request for discovery relating to their selective prosecution claim must be supported by some *evidence* that the decision to prosecute was at least in part motivated by Defendants' race, Defendants arguments appears to contend all violent offenders are black—that is, only black offenders are arrested by the FBI and processed by the U.S. Marshal in the manner Defendants were arrested and processed. Defendants offer no evidence in support of this argument. Finally, Defendants offer nothing to support the conclusion that the U.S. Attorney's Office issues press releases only in cases in which black individuals are subject to arrest.

In sum, Defendants make broad brush allegations that because of their race they were treated unfairly when arrested and detained by federal law enforcement. Defendants further appear to contend the U.S. Attorney's press release was somehow racially motivated. The problem is that all Defendants offer in support of these contentions is argument. Even the declarations from Defendants' son and expert say nothing about the Government's actions being motivated by race.[12] ECF No. 67-1 at 2-8.

The Court finds Defendants' do not demonstrate "some evidence" of a discriminatory purpose.

---

[11] Defendants admit the decision to shackle them was not made by the U.S. Attorney. ECF No. 67 at 4.
[12] Defendants' son does say his family lives in a neighborhood in which they are one of two black families. ECF No. 67-1 ¶ 3.

      *iv.*  *Conclusion and Recommendation.*

Defendants have not met their burden to produce some evidence of discriminatory effect and purpose sufficient to support their request for discovery related to a selective prosecution claim. For this reason the Court recommends denying Defendants' Motion to Compel the Government to produce documents and information relating to a selective prosecution claim.

   b.  <u>Defendants' Selective Enforcement Claim Fails</u>.

     *i.*  *The Law*.

In *Sellers*, the Ninth Circuit recognized the standard applicable to discovery in selective enforcement is not quite as rigorous as the standard applicable to selective prosecution because law enforcement does "not enjoy the same strong presumption that they are constitutionally enforcing the laws that prosecutors do." 906 F.3d at 853. Applying the analysis to a "reverse-sting operation," the court noted there will be "no evidence of similarly situated individuals who were not targeted" by law enforcement officers. *Id*. Analysis specific to reverse-sting operations led the court to conclude that "[a]sking a defendant claiming selective enforcement to prove who *could* have been targeted by an informant, but was *not*, or who the ATF *could* have investigated, but did *not*, is asking him to prove a negative; there is simply no statistical record for a defendant to point to." *Id*. (emphasis in original). The court ultimately made clear that the rigorous discovery standard stated in *Armstrong* "does not apply strictly to discovery requests in selective enforcement claims like Sellers's." *Id*. at 855. Here, unlike *Sellers*, Defendants were not targeted in a reverse-sting operation in which "no independent crime" was committed or where "the existence of the crime is entirely dependent on law enforcement approaching potential targets." *Id*. at 853.

The District of Oregon distinguished *Sellers* in *United States v. Harrop*, Case No. 1:20-cr-00260-AA, 2021 WL 2912472, at *5 (D. Ore. July 12, 2021). The court plainly explained that "the nature of reverse-sting operations," resulting in "no evidence of similarly situated individuals who were not targeted," yielded the lower standard for obtaining discovery where selective enforcement is alleged. *Id*. at 4. The court found that because the defendant (Harrop), "not law enforcement, recruited the moving Defendants to plan and carry out the" illegal activity, the history of reverse-sting operations, which "have a history of disparate impact and use against non-white defendants …

[did] not automatically impute any sort of discriminatory motivation to the federal agents in th[e] … case." The court then analyzed evidence presented by the defendants finding it insufficient to establish a right to discovery under their selective enforcement claim. *Id*. at 5.

Here, Defendants applied for governmental funds through PPP and EIDL and are alleged to have used the funds received to enrich themselves rather than for the purposes Defendants claimed the funds would be used. ECF No. 1 ¶¶ 19-22, 26-31. Thus, while in the context of Defendants' selective enforcement claim the "presumption of prosecutorial regularity does not apply, and discovery may be had on a lower showing," Defendants must still show "something more than speculation" and the standard may vary from "case to case." *Babichenko*, 2020 WL 6449164, at *3 *citing* and *quoting*, in part, *Sellers*, 906 F.3d at 855-56. In fact, "[t]he district court retains discretion to allow, and manage, discovery based on the reliability and strength of the defendant's showing." *Id*. *citing Sellers*, 906 F.3d at 855. Finally, the Court finds no presumption of discriminatory effect and purpose is imputed to governmental actors in this non-reverse-sting operation as the "something more" standard is applicable to a charge of wire fraud that does not have any history of disparate enforcement against non-whites.

                *ii.*    *Defendants offer no evidence of discriminatory purpose.*

Defendants do not offer a separate and clearly delineated argument regarding selective enforcement. *See* ECF No. 67. The Court therefore presumes Defendants ask the Court to consider all the information offered in support of discovery in selective prosecution as also offered in support of selective enforcement. However, the problem for Defendants is that even if the standard for obtaining discovery in selective enforcement is lower than in selective prosecution in a wire fraud and conspiracy to commit wire fraud case, Defendants do not meet the standard. At the risk of redundancy, the evidence regarding Texas applicants and recipients of PPP and EIDL loans says nothing about enforcement of the laws with which Defendants are charged. The Northern District of Georgia statistics are flawed, and Defendants provide no other statistical evidence or insight into enforcement in the District of Nevada or anywhere else. ECF Nos. 67 and 85. In the absence of (1) reliable statistical evidence of any disparity in enforcement—that is, evidence that those outside Defendants' protected class (black) who committed roughly the same crime were not prosecuted, or

11

(2) any evidence that the Government (whether the FBI or the U.S. Attorney) chose to enforce the wire fraud and conspiracy to commit wire fraud statutes against Defendants at least in part because of their race, and (3) given Defendants' arguments regarding their arrest, processing by the Marshal Service, and issuance of a press release offers nothing more than speculation regarding an intent to discriminate, the Court finds Defendants do not offer sufficient evidence to support their request for discovery related to a selective enforcement claim. *Babichenko*, 2020 WL 6449164 at **4-5.

Dated this 10th day of June, 2024.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).